# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JOHNNY AND TRESA MONTOYA,

                Plaintiffs,

vs.                                                              No. _____

THE UNITED STATES OF AMERICA,

                Defendant.

**COMPLAINT FOR NEGLIGENT HIRING AND SUPERVISION,
MEDICAL NEGLIGENCE AND LOSS OF CONSORTIUM**

For their Complaint for Medical Negligence, Plaintiffs state and allege:

1. This civil action is brought against the United States for money damages due to the negligent acts of employees of the United States of America at the Albuquerque Veterans Administration Medical Center (AVAMC).

2. This complaint is brought pursuant to the provisions of the Federal Tort Claim Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, 28 U.S.C. § 1346(b) and 28 U.S.C. § 1331. These statutes vest subject matter and personal jurisdiction with this Court.

3. Plaintiffs are residents of New Mexico.

4. On information and belief, Dr. Frank Zimba is a resident of Oklahoma.

5. At all times material to this action, the AVAMC employed Dr. Zimba.

6. The negligent actions or inactions giving rise to this cause of action occurred at the Veterans Administration Hospital in Albuquerque, New Mexico.

7. Pursuant to statute, Plaintiffs timely filed Administrative Claim Form 1095 with the United States Department of Veterans' Affairs on or about March 3, 2014. Plaintiffs have exhausted their administrative remedies.

8. Venue is proper in this district under 28 U.S.C. §1402(b) because Plaintiffs reside in New Mexico and the acts complained of in this Complaint occurred in New Mexico.

9. Defendant United States is liable for the acts of its agents and employees at AVAMC and is the proper party under the Federal Tort Claims Act (FTCA), 28 U.S.C. Section 2671 *et seq*. At all times material hereto, Defendant United States of America owned and managed the AVAMC in Albuquerque, New Mexico.

10. All acts or omissions complained of in this Complaint were made by agents, employees, apparent agents or apparent employees of AVAMC who were acting within the course and scope of their agency or employment at AVAMC. The Defendant is vicariously liable for all the acts or omissions that give rise to this Complaint.

11. The AVAMC was under a duty to exercise reasonable diligence in obtaining and acting upon information concerning the competence of applicants to and members of its hospital staff.

12. The AVAMC was negligent by failing to exercise reasonable diligence in obtaining and acting upon information concerning the competence of Dr. Frank Zimba during its credentialing of Dr. Zimba, and by granting him staff privileges to work at the AVAMC when it knew or should have known that he was not qualified to exercise hospital privileges with reasonable skill.

13. AVAMC negligently hired Dr. Frank Zimba while disciplinary proceedings were underway against him in Oklahoma. The disciplinary proceedings in Oklahoma ultimately resulted in the suspension of his Oklahoma medical license.

14. In addition to problems in Oklahoma, Dr. Zimba was alleged to have performed surgery on the wrong side of two patients' spines in New York. As a result, Dr. Zimba received a reprimand, probation, fines, and one year of monitoring related to the New York incidents. Dr. Zimba was also subject to fines in Michigan and Pennsylvania where he held or holds a medical license. The AVAMC knew or should have known of these incidents when it hired Dr. Zumba. AVAMC negligently credentialed and hired Dr. Zimba and granted him privileges to work at the AVAMC and, once hired, negligently failed to supervise Dr. Zimba.

15. As a military veteran, Plaintiff is entitled to receive medical care at AVAMC.

16. In 2012, Mr. Montoya was a 67-year-old veteran of the Vietnam War and eligible for healthcare at the Albuquerque Veterans Administration Hospital.

17. Mr. Montoya saw his primary care physician, Dr. Linszky, on February 15, 2012 for an acute visit. He told Dr. Linszky that he had moments of "seizures" when his legs would not move. The "seizure" activity went away as quickly as it started. He denied headaches and there is no mention of visual disturbance in the note. Dr. Linszky ordered a neurology consultation, EEG and MRI/CT.

18. Mr. Montoya had a CT on March 13, 2012 which described mildly dilated lateral and third ventricles with a component of obstructive hydrocephalus secondary to mass effect, a 4 cm sellar/suprasellar mass with a "favored" diagnosis of pituitary macroadenoma.

19. A MRI without contrast on March 15, 2012 identified a sellar/suprasellar mass likely representing a "macroadenoma with differential considerations such as craniopharyngioma" being much less likely.

20. A MRI with and without contrast on March 19, 2012 showed a sellar/supraselllar mass putting pressure on the optic nerve.

21. Mr. Montoya saw his primary care physician on March 20, 2012. The patient was strongly advised to make an appointment with neurosurgeon Dr. Frank Zimba to discuss treatment options. Mr. Montoya complied and made the appointment.

22. Mr. Montoya saw Dr. Zimba for the first time on March 30, 2012. Dr. Zimba discussed a transnasal surgical approach to the tumor. He requested consults with a number of physicians and discussed a referral to the University of New Mexico Hospital. If the Defendant could not operate on Mr. Montoya, the Defendant, acting through its employees and agents, was obligated to get Mr. Montoya in the hands of a neurosurgeon who could do the surgery.

23. Mr. Montoya returned to Dr. Zimba on April 2, 2012. Dr. Zimba planned for endocrinology, otolaryngology and optometry consultations.

24. The patient was seen at the AVAMC by ENT Dr. Pickett on April 24, 2012. Dr. Pickett's impression included pituitary mass and he recommended a transnasal endoscopic surgery. Surgery was going to be planned with neurosurgery following an endocrinology workup.

25. Mr. Montoya was seen at the AVAMC by Dr. Zimba again on May 10, 2012 at which time Dr. Zimba indicated that he was unprepared to remove the tumor without an upgrade of the VA stereotactic image guidance system. He advocated sending

Mr. Montoya to the University of New Mexico Hospital for resection. However, neither Dr. Zimba nor the AVAMC made arrangements for referral and refused to authorize a fee-based referral.

26. There was discussion about getting Mr. Montoya to the University of New Mexico Hospital (UNMH) for a fee-based consultation and surgery. Through its agents, the AVAMC told Mrs. Montoya that Dr. Zimba could not refer her husband to UNMH since Dr. Zimba did not have a New Mexico license to practice medicine.

27. Mrs. Montoya watched her husband deteriorate as precious time was passing. She was desperately trying to get her husband referred to a neurosurgeon who could operate on Mr. Montoya but was told by the AVAMC that her husband was not eligible for a fee based referral and therefore UNMH was not an option. Mrs. Montoya begged the AVAMC to do something.

28. Mr. Montoya was finally seen at UNMH by neurosurgeon Dr. Martina Stippler on June 21, 2012. Dr. Stippler acknowledged that Mr. Montoya had an "urgent problem," but she could not perform surgery until July 9, 2012.

29. Mr. Montoya presented urgently at the AVAMC on June 28, 2012 with new symptoms including weakness, lack of coordination and memory loss. His obstructive hydrocephalus was worsening according to a CT done at the AVAMC on June 28, 2012. Dr. Dorin (endocrinology) was concerned about Mr. Montoya showing significant deterioration.

30. Mr. Montoya was seen emergently by Dr. Zimba on June 28, 2012. The patient's condition had worsened significantly due to a delay in proper treatment. Dr. Zimba described "extreme hydrocephalus" and thought Mr. Montoya might need urgent

surgical intervention. The University of New Mexico could not operate until July 9, 2012, and Mr. Montoya could not wait that long.

31. Dr. Dorin appreciated the seriousness of the situation and told Mrs. Montoya that he would contact Dr. Daniel Craig for an urgent referral to the University of Colorado. This urgent referral was necessary because the AVAMC had not timely treated or referred Mr. Montoya. The University of Colorado agreed to accept Mr. Montoya as a patient.

32. Mrs. Montoya urgently drove her husband to Colorado the next day (Friday, June 29) and Mr. Montoya was admitted to the University of Colorado Hospital on June 29, 2012.

33. Mr. Montoya underwent surgery on Monday July 2, 2012. He was taken back to the operating room on July 15, 2012 and ultimately discharged from the intensive care unit on July 23. He was then transferred to rehabilitation where he remained until August 8, 2012.

34. Mr. Montoya followed up at the Albuquerque VA Hospital. Among other things, he had "severe visual loss," memory loss, fatigue, and seizure activity.

35. Mr. Montoya has significant problems including, but not limited to, severe vision problems, memory problems, tremors, memory problems, instability while walking, depression and fatigue. He is a different person than when he first presented to AVAMC.

36. Defendant, by and through its physicians, nurses, staff and management at the AVAMC in Albuquerque, New Mexico, was under the duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well qualified

hospitals, health care providers and specialists practicing under similar circumstances, giving due consideration to the locality involved.

37. Defendant, by and through its physicians, nurses, staff and management at the AVAMC in Albuquerque, New Mexico was medically negligent and breached the duties of care owed to Mr. Montoya on March 13, 2012 and thereafter. The negligence of the Defendant includes, but is not necessarily limited to: negligent credentialing, privileging, hiring and supervising Dr. Zimba; negligent failure to timely act on abnormal MRI findings on March 13, 2012; negligent failure to properly diagnose and treat Mr. Montoya in a timely fashion; negligent failure to refer Mr. Montoya to an outside facility/surgeon for timely surgery; negligent failure to explain the risk of the continued delay in receiving medical treatment; and refusing to pay for a fee based consultation outside the VA system.

38. In the alternative, the Defendant's negligence caused Plaintiff Johnny Montoya to lose a measurable opportunity for a better result from a preexisting condition, and lose a measurable opportunity to avoid the injuries set forth above and damages. The lost opportunity is an injury in itself. *See* UJI 13-1635, 13-1802A; *Alberts v. Schultz*, 1999-NMSC-015, 126 N.M. 807, 975 P.2d 1279.

39. As a result of the medical negligence of Defendant, by and through its physicians, nurses, staff and management at the AVAMC in Albuquerque, New Mexico, Johnny Montoya sustained damages, including:

    a.    pain and suffering, past and future;

    b.    permanent physical injury and impairment;

    c.    past and future medical expenses; and

      d.      partial loss of enjoyment of life.

      40.      Tresa and Johnny Montoya were married on July 11, 1990. At all times material hereto, Tresa Montoya was the wife of Johnny Montoya. Tresa Montoya enjoyed a close familial relationship with her husband, shares a residence and is involved in her husband's life on a day to day basis.

      41.      During their almost 25 years of marriage, Tresa and Johnny Montoya have benefited from one another's companionship, have enjoyed a close marital relationship, have lived together, have been involved in day to day activities of living, and have relied on one another for emotional support and guidance, affection, service, society, marital relations and companionship.

      42.      As a proximate result of Defendants' negligence, Tresa Montoya's relationship with her husband has been affected and has suffered some loss of Johnny Montoya's companionship and society. Tresa Montoya has and continues to suffer damages as a proximate result of these losses, and will continue to suffer these losses in the future.

      WHEREFORE Plaintiffs request this Court enter judgment in their favor for all damages claimed, for costs and fees as permitted by law, and for such other relief as the Court deems proper.

GREGORY W. CHASE, P.C.


*/s/ Gregory W. Chase*              GWC
Gregory W. Chase
Andrew Scholl
7801 Academy NE
Building 2
Suite 104
Albuquerque, New Mexico 87109
Phone:  (505) 888-6463
FAX:    (505) 888-6465
greg@gregchaselaw.com
andy@gregchaselaw.com

*Attorneys for Plaintiffs*

9